GAI 6001 (Ed. 06 97)

**Policy No.**: UM 1942898
**Renewal of**: UM 4433561

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| | |
|---|---|
| **1. NAMED INSURED AND ADDRESS:**<br>Distinguished Properties Umbrella Managers, Inc.<br>c/o 3H Corporate Services, LLC<br>1201 N. Orange Street, Suite 710<br>Wilmington, DE 19801-1186 | **2. POLICY PERIOD:**<br>12:01 A.M. Standard Time at the address of the Named Insured shown at left.<br>From: 09/01/13   To: 09/01/15 |
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **PRODUCER'S NAME AND ADDRESS:**<br>Distinguished Programs Insurance Brokerage, LLC<br>1180 Avenue of the Americas, 16th Floor<br>New York, NY 10036 |

Insurance is afforded by: GREAT AMERICAN INSURANCE COMPANY

**3. PREMIUM:**

| | |
|---|---|
| Commercial Umbrella Premium | $ Per Individual Certificate of Coverage |
| Personal Umbrella Premium | $ |
| Total Advance Premium | $ |
| Service Charge | $ |
| Taxes | $ |
| Surcharge | $ |
| Total | $ Per Individual Certificate of Coverage |

In the event of cancellation by the Named Insured, the company will receive and retain no less than 20% as a policy minimum premium.

**BASIS OF PREMIUM:**   Non-Auditable  ( X )   Auditable  (  )

| | | |
|---|---|---|
| **4. LIMITS OF INSURANCE:** | $Per Certificate | Each Occurrence |
| | $Per Certificate | General Aggregate (Where Applicable) |
| | $Per Certificate | Products-Completed Operations Aggregate |

**5. SELF-INSURED RETENTION: $** NONE

**6. FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule, GAI 6013 (Ed. 06 97).

Countersigned _____ By _____

Date                                    Authorized Representative



Administrative Offices
301 E 4th Street
Cincinnati, Ohio 45202-4201
513 369 5000 ph

GAI 6013  (Ed. 06 97)

# FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form Number | Edition Date | Form Description |
|---|---|---|
| GAI 6001 | 6/97 | Protector Commercial Umbrella Declarations Page |
| GAI 6013 | 6/97 | Forms & Endorsements Schedule |
| GAI 6008 | 6/97 | Schedule A (Schedule of Underlying Policies) |
| GAI 7118 | 2/10 | Limitation of Coverage to Specified Locations Endorsement |
| GAI 6002 | 6/97 | Protector Commercial Umbrella Coverage Form |
| GAI 6434 | 7/99 | Amendment of Insuring Agreement – Known Injury or Damage |
| GAI 6312 | 6/97 | Unintentional Errors or Omissions |
| GAI 7115 | 7/11 | Risk Purchasing Group Endorsement |
| GAI 7235 | 3/12 | Crisis Response Coverage Endorsement |
| GAI 6011 | 6/97 | Claims Made Coverage Endorsement |
| GAI 6478 | 4/03 | Underlying Sublimits Endorsement |
| GAI 6129 | 6/97 | Personal Injury - Following Form |
| GAI 6047 | 6/97 | Advertising Injury - Following Form |
| GAI 6113 | 6/97 | Contractual Liability - Following Form |
| GAI 6106 | 6/97 | Auto Liability – Following Form |
| GAI 7164 | 5/11 | Directors and Officers Liability Following Form |
| GAI 6136 | 6/97 | Punitive or Exemplary Damages - Following Form |
| GAI 6153 | 6/97 | Employee Benefit Liability – Following Form |
| GAI 6135 | 6/97 | Professional Liability Exclusion |
| GAI 6442 | 1/02 | Fungi, Mold or Spores Exclusion (Except NY) |
| GAI 6127 | 6/97 | Non-Business Activities Exclusion |
| GAI 6333 | 6/97 | Exclusion – Liability Arising out of Lead |
| GAI 6011 | 6/97 | Exclusion of Claims and Suits Alleging Infringement of Intellectual Property |
| GAI 7119 | 2/10 | Amendment of Pollution Exclusion – Exception for Named Peril of Hostile Fire; Building Heating, Cooling and Dehumidifying Equipment And Water Heating Equipment |
| GAI 6474 | 3/03 | War Liability Exclusion |
| GAI 6819 | 10/04 | Silica or Related Dust Exclusion |
| GAI 6011 | 6/97 | Broad Named Insured Endorsement |
| GAI 6452 | 1/08 | Cap on Losses from Certified Acts of Terrorism |
| GAI 6869 | 08/05 | Nuclear, Biological, or Chemical Exclusion |
| GAI 6475 | 1/08 | Act of Terrorism Retained Limit |
| GAI 6458 | 1/08 | Exclusion of Punitive Damages Related to a Certified Act of Terrorism |
| IL 7268 | 09/09 | In Witness Clause |
| IL 7324 | 08/12 | Economic and Trade Sanctions Clause |



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**GAI 6008**
**(Ed. 06 97)**

### SCHEDULE A—SCHEDULE OF UNDERLYING INSURANCE (SUPPLEMENTAL)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance (THE LIMITS LISTED BELOW ARE THE MINIMUM LIMITS REQUIRED AND MAY BE HIGHER) |
|---|---|---|
| It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | General Liability | $1,000,000 Each Occurrence<br>$1,000,000 Personal & Advertising Injury<br>INCLUDED Products/Completed Operations Aggregate<br>$2,000,000 General Aggregate |
| IF ANY - It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Auto Liability | $1,000,000 Combined Single Limit<br>Per Individual Schedule Automobile Symbols |
| IF ANY - It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best | Employee Benefits Liability | $1,000,000 Each Claim/Occurrence<br>$1,000,000 Aggregate |
| IF ANY - It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Employers Liability* | $500,000 Each Accident<br>$500,000 Each Employee – Disease<br>$500,000 Policy Limit – Disease |
| IF ANY - It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | Garagekeepers Legal Liability | $1,000,000 Each Loss |
| IF ANY - It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best | Directors & Officers Liability** (see below) | $1,000,000 Aggregate |

*Exceptions include coverage written with a certified state fund or any underlying carrier expressly approved by The Distinguished Programs Group
** Directors & Officers Liability for Not for Profit Condominium, Cooperative and Homeowners Associations only



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 71 18 (Ed. 02 10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LIMITATION OF COVERAGE TO SPECIFIED LOCATIONS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

The policy applies only to liability arising out of:

**A.**   An "insured's" operation at the premise(s) listed below

    1.   Specified Locations Covered by underlying insurance and which are listed on the Schedule of Locations Form #DP 001, issued with the Distinguished Properties Umbrella Managers, Inc. Purchasing Group member's individual certificate of coverage, attached to and form part of this policy.

    or

**B.**   any premise(s) newly acquired by the insured, if such acquisition is reported to us within 90 days of the acquisition of such ownership or control by any "insured" from a prior owner that is not an "insured"

**This endorsement does not change any other provision of the policy.**



Administrative Offices
301 E 4th Street
Cincinnati  OH  45202-4201
513 369 5000 ph

**GAI 6002**
(Ed. 06  97)

# T H E   P R O T E C T O R

## COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE.**

### II. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in Item **4.** of the Declarations and the rules below state the most we will pay regardless of the number of:

1. "Insureds";

2. "claims" made or "suits" brought; or

3. persons or organizations making "claims" or bringing "suits."

**B.** The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section **I.,** except:

1. damages included in the "products-completed operations hazard"; and

2. coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

**C.** The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

**D.** Subject to **B.** or **C.** in Section **II. LIMITS OF INSURANCE,** whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the **Insuring Agreement** in Section **I.** because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

F 89720 (3/2011)

E. If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

1. in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

2. in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G. **Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

2. the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

## III. DEFENSE

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

B. When we assume the defense of any "claim" or "suit":

1. We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

2. All expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

3. We will pay the following as expenses, to the extent that they are not included in the coverage in the underlying policies listed in the Schedule of

Underlying Insurance or in any other insurance providing coverage to the "Insured":

**a.** premiums on bonds to release attachments, which bond amounts will not exceed our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

**b.** premiums on appeal bonds, which bond amounts will not exceed our policy limits, required by law to appeal any "claim" or "suit" we defend, but we are not obligated to apply for or furnish any such bond;

**c.** all costs taxed against the "Insured" in any "claim" or "suit" we defend;

**d.** pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limits of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

**e.** all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

**f.** the "Insured's" actual and reasonable expenses incurred at our request.

**C.** We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

**D.** In all other instances except Subsection **A.** in Section **III. DEFENSE,** we will not be obligated to assume charge of the investigation, settlement or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense and trial of any "claim"

or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## IV. EXCLUSIONS

This insurance does not apply to:

**A.** "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**B.** Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance.

**C.** Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 or any amendments to that act, or under any similar law, regulation or ordinance.

**D.** Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

**E.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**1.** a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**2.** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**F.** "Property damage" to "your product" arising out of it or any part of it.

**G.** "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **1.** "your product";

    **2.** "your work"; or

    **3.** "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**I.** "Property damage" to property owned by the "Insured."

**J.** "Personal injury" or "advertising injury":

    **1.** arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

    **2.** arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

    **3.** arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or

    **4.** for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

**K.** "Advertising injury" arising out of:

    **1.** breach of contract, other than misappropriation of advertising ideas under an implied contract;

    **2.** the failure of goods, products or services to conform with advertised quality or performance;

    **3.** the wrong description of the price of goods, products or services; or

    **4.** an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

**L.** Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

    **1.** The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

    **2.** Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

    **3.** Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.

Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

**M.** "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**N.** Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

   **1.** asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

   **2.** exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

   **3.** any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

**O.** "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

   **1.** refusal to employ or promote;

   **2.** termination of employment;

   **3.** coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

   **4.** consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of **O.1.** through **O.3.**

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

**P.** "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the **Nuclear Energy Liability Exclusion** attached to this Policy.

**Q.** The following Items **1.** through **4.**, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

   **1.** Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

   **2.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

   **3.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such aircraft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

   **4.** "Bodily injury" to:

     **a.** an employee of any "Insured" arising out of and in the course of:

    i. employment by any "Insured"; or

    ii. performing duties related to the conduct of any "Insured's" business; or

**b.** the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph **4.a.**

This exclusion applies:

**a.** whether any "Insured" may be liable as an employer or in any other capacity; and

**b.** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

# V. DEFINITIONS

**A.** "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

    **1.** oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **2.** oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

    **3.** misappropriation of advertising ideas or style of doing business;

    **4.** infringement of copyright, title or slogan; or

    **5.** mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **A.1.** through **A.4.**

**B.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

**C.** "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

**D.** "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

**E.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **1.** it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **2.** you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **1.** the repair, replacement, adjustment or removal of "your product" or "your work"; or

    **2.** your fulfilling the terms of the contract or agreement.

**F.** "Insured" means each of the following, to the extent set forth:

    **1.** The Named Insured meaning:

        **a.** Any person or organization listed in Item **1.** of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

        **b.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

            **(1)** coverage under this provision is afforded only until the 90th day after you ac-

quire or form the organization or the end of the policy period, whichever is earlier;

**(2)** coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

**(3)** coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

**2.** If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

**3.** If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

**4.** If you are a limited liability company, the members or managers but only as respects the conduct of your business.

**5.** Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

**6.** Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

However, the coverage granted by this Provision **6.** does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

**7.** Any person, other than one of your employees, or organization while acting as your real estate manager.

**8.** Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision **8.** does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

**9.** No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**G.** "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

H. "Loading" or "unloading" means the handling of property:

1. after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. while it is in or on an aircraft, watercraft or "auto";

3. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. equipment designed primarily for:

      (1) snow removal;

      (2) road maintenance, but not construction or resurfacing; or

      (3) street cleaning;

   b. cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

J. "Occurrence" means:

1. as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2. as respects "personal injury," an offense arising out of the business of any "Insured" that results in "personal injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3. as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising in-

jury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

K. "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **K.1.** through **5.**

L. 1. "Products-completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from premises you own or rent and arising out of "your product" or "your work" except:

a. products that are still in your physical possession; or

b. work that has not yet been completed or abandoned.

2. "Your work" will be deemed completed at the earliest of the following times:

a. When all of the work called for in your contract has been completed.

b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This "products-completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

b. the existence of tools, uninstalled equipment or abandoned or unused materials.

M. "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

N. "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

1. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

O. "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

P. "Your product" means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a. you;

    b. others trading under your name; or

    c. a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Q. "Your work" means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

2. the providing of or failure to provide warnings or instructions.

## VI. Conditions

### A. Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item 4. of the Declarations plus the cost and expense of such appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy. Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item **3.** of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item **3.** of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item **1.** of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

### E. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

### F. Duties in The Event of An Occurrence, Claim Or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

   a. how, when and where the "occurrence" took place;

   b. the names and addresses of any injured person and witnesses;

   c. the nature and location of any injury or damage arising out of the "occurrence."

2. If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved "Insured" must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

   b. authorize us to obtain records and other information;

c. cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

4. The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## G. Inspection

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

## H. Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1. you have complied with all the terms of this policy; and

2. the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

## I. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

## J. Other Insurance

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

## K. Premium

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item **3.** of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item **3.** of the Declarations.

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item **3.** of the Declarations for each twelve months of our policy period.

## L. Separation of Insureds

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item **1.** of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and

2. separately to each "Insured" against whom "claim" is made or "suit" brought.

## M. Transfer of Rights of Recovery Against Others to Us

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. we then will be reimbursed up to the amount we have paid; and

3. lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the excercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

## N. Terms Conformed to Statute

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

## O. Transfer of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item **1.** of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

## P. When Loss Is Payable

Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self-Insured Retention advanced by us at our discretion on behalf of any "Insured."

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

1. Any liability, injury or damage:

   a. with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

   b. resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** any "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

   a. the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or **(b)** has been discharged or dispersed therefrom;

   b. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

   c. the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **2.c.** applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

3. As used in this exclusion:

   a. "Hazardous properties" includes radioactive, toxic or explosive properties.

   b. "Nuclear facility" means:

      i. any "nuclear reactor";

      ii. any equipment or device designed or used for

         **(1)** separating the isotopes of uranium or plutonium,

         **(2)** processing or utilizing "spent fuel" or

         **(3)** handling, processing or packaging "nuclear waste";

      iii. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      iv. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

   c. "Nuclear material" means "source material," "special nuclear material" or by-product material.

d. "Nuclear property damage" includes all forms of radioactive contamination of property.

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. "Nuclear waste" means any nuclear waste material **(a)** containing "by-product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

g. "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

Secretary

President



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
£13 369 5000 ph

**GAI 6434**
(Ed. 07 99)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF INSURING AGREEMENT -
## KNOWN INJURY OR DAMAGE

Section **I - COVERAGE** is deleted and replaced by the following:

**1. COVERAGE**

  **a.** We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** Prior to the policy period, no "Insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "Insured" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or

"property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any "Insured," includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Insured":

    **(1)** reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1999

GAI 6434 (Ed. 07/99) XS

F 89720 (3/2011)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6312**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## UNINTENTIONAL ERRORS OR OMISSIONS

**SECTION I. - COVERAGE** is amended to include the following:

Failure of the "Insured" to disclose all hazards existing as of the inception date of this policy will not prejudice the insurance with respect to the coverage afforded by this policy, provided such failure or omission is not intentional on the part of the "Insured."

This endorsement does not change any other provision of the policy.

GAI 6312 (Ed. 06/97) XS



Administrative Offices
301 E. 4th St.
Cincinnsti, Ohio 45202
Tel: 1-513-369-5000

GAI 71 15 (Ed. 07 11)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## RISK PURCHASING GROUP ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

The following is added to Section **II. LIMITS OF INSURANCE:**

**Limits For Certificate of Coverage**

The Limits of Insurance of this policy apply individually to each certificate of coverage issued to members of **The Distinguished Properties Umbrella Managers, Inc. Purchasing Group.** Limits of Insurance shown on each certificate of coverage are the limits for that individual member only.

Section **IV. EXCLUSIONS – Q.** is deleted and replaced with the following:

**Q.** The following items **1.** through **4.**, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

1. Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

2. Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft.

    This exclusion shall not apply to:

    **a.** watercraft while ashore on premises owned by, rented to, or controlled by you; or

    **b.** watercraft you do not own that is;

      **i.**  less than 26 feet long; and

      **ii.**  not being used to carry persons of property for a charge.

3. "Bodily injury" to:

    **a.** an employee of any "Insured" arising out of and in the course of:

      **i.**  employment by any "Insured"; or

      **ii.**  performing duties related to the conduct of any "Insured's" business; or

    **b.** the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph **4.a.**

    This exclusion applies:

    **a.** whether any "Insured" may be liable as an employer or in any other capacity; and

    **b.** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

4. Any liability of any "Insured" by reason of:

    **a.** causing or contributing to the intoxication of any person; or

**b.** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol, or;

**c.** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

The following are added to Section **IV. EXCLUSIONS:**

**Aircraft Liability**

Any liability for or arising out of the ownership, maintenance, operation, use, "loading," or "unloading" of any aircraft.

**Bodily Injury or Property Damage Follow Form**

Except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy, any "bodily injury" or "property damage".

**Real Property Construction or Development**

Any liability or loss, cost or expense arising out of:

1. the development, construction, or demolition of real property; or

2. the "structural alteration" or addition of real property

This exclusion applies to work performed solely by the insured on the insured's property.

As used in this endorsement, "structural alteration" means work or operations affecting the structural integrity of real property, but is not repairs, maintenance, or renovations that do not affect the structural integrity of real property.

**Earthquake or Flood Coverage Omission**

Any failure or omission on the part of the "Insured" or its agent(s) to obtain, effect, maintain or adhere to any policies of insurance which provide coverage for damage due to earthquake or flood perils.

**Builder, Developer or Sponsor Wrongful Act**

Any "wrongful act" which is directly or indirectly related in whole or in part to actual or alleged "wrongful act" on the part of a builder, developer or sponsor or anyone affiliated with a builder, developer or sponsor. This exclusion shall not apply to claims while such an "Insured" is a member on the "Insured's" board of directors and in the capacity as such.

As used in this endorsement, "wrongful act" means any actual or alleged error, misstatement, misleading statement, act, or omission, neglect or breach of duty.

**Swimming Pools**

Any "bodily injury," "personal injury," "advertising injury" or medical payments arising out of the ownership, maintenance, operation or use of a swimming pool unless 1) if outdoors, the swimming pool is fenced with a self-closing or self-latching gate; or 2) if indoors or on a roof-top, restricted access is through a self-closing and self-locking door; 3) if the swimming pool's design or operation complies with the Virginia Graeme Baker Act. With respect 1, 2 & 3 the swimming pool must meet or exceed all federal, state or local governing codes and regulations.

**Care, Custody, or Control Exclusion – Real and Personal Property with Garagekeepers Legal Liability Follow Form**

Except to the extent that such insurance is provided by a Garagekeepers Legal Liability Policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy, any "property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented, or occupied by any "Insured," or as to which any "Insured" is for any purpose exercising physical control.

**Discrimination Follow Form**

Except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy, any "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any "claim" or "suit" based upon or alleging "discrimination" against any non-employee unless insurance for "discrimination" is prohibited by law..

"Discrimination" includes discrimination on the basis of age, disability, ethnic origin, marital status, physical or mental hardship, race, religious affiliation, sex or sexual orientation.

If any coverage is afforded by this section such coverage will only apply to "discrimination" based on disparate impact or vicarious liability.

The following is added to Section **VI. CONDITIONS – F. Duties In The Event of An Occurrence, Claim Or Suit:**

5. If an "occurrence", "claim" or "suit" does not reasonably appear likely to involve this insurance, the failure to report it to us will not violate this condition, provided the "Insured" gives us notice as soon as practicable once the "Insured" becomes aware that the "occurrence", "claim" or "suit" is reasonably likely to involve this insurance.

6. Knowledge of any "occurrence," "claim," or "suit" by any agent, servant, or employee if the "Insured" does not in itself constitute knowledge by the "Insured" unless notice of such "occurrence," "claim," or "suit" has been received by an executive officer, manager, risk manager, authorized employee, or partner of a Named Insured.

The following are added to Section **VI. CONDITIONS**:

**Policy Period**

It is agreed that the policy period shown on the individual certificate of coverage is the period that insurance is in force for that individual certificate holder, regardless of the policy period of this policy: however, the expiration date on the individual certificate of coverage shall not be a later date than the expiration date of this policy.

**Amendments Attached to Certificate of Coverage**

It is agreed that if any exclusions, restrictions or amendments of coverage are shown on the certificate of coverage issued to an individual "Insured," that exclusion, restriction or amendment shall be deemed part of this policy as respects that individual "Insured".

**This endorsement does not change any other provision of the policy.**

GAI 71 15 (Ed. 07/11)                    Page 3 of 3



Administrative Offices
301 E 4th Street
Cincinnati, Ohio 45202-4201
Tel: 1-513-369-5000

GAI 7235 (03/12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CRISIS RESPONSE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

### Schedule

| Crisis Response Coverage | Limit of Insurance |
|---|---|
| Crisis Response Aggregate Limit | $ Per Individual Certificate of Coverage |

Subject to the terms and conditions set forth in this endorsement and the Limit of Insurance shown in the above Schedule, the following Crisis Response Coverage is added to the policy.

**SECTION I - CRISIS RESPONSE COVERAGE**

**A.** We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" you incur because of either:

    **1.** "bodily injury" or "property damage" for which coverage is provided under the COMMERCIAL UMBRELLA COVERAGE FORM (including all its endorsements other than this endorsement), or

    **2.** "imminent injury,"

arising out of a "crisis event" to which this insurance applies. The amount we will reimburse you or pay on your behalf for such "crisis response costs" is limited as described in SECTION II - CRISIS RESPONSE LIMITS OF INSURANCE.

**B.** This Crisis Response Coverage applies to a "crisis event" and its resulting "crisis response costs" only if:

    **1.** The "bodily injury," "property damage," or "imminent injury" arising out of that "crisis event" takes place in the "coverage territory"; and

    **2.** That "bodily injury," "property damage," or "imminent injury" begins to occur during the Policy Period; and

    **3.** The "crisis response costs" because of that "bodily injury," "property damage," or "imminent injury" do not arise out of any fact, circumstance, condition, situation, "bodily injury," "property damage," or "imminent injury":

        **a.** that existed before the Policy Period; and

        **b.** that you, before the beginning of the Policy Period, knew or reasonably should have known could lead to, cause, give rise to, or result in such "crisis response costs"; and

4.  You incur the "crisis response costs" because of the "bodily injury," "property damage," or "imminent injury" within thirty (30) days after the beginning of the "crisis event." The end of the Policy Period will not cut short this thirty (30) day period.

**C.**  Our payment or reimbursement of "crisis response costs" under this Crisis Response Coverage is not, and shall not be construed as, an admission or acknowledgement of coverage for any "crisis event," "bodily injury," "property damage," or "imminent injury" under any other part of this policy.

**D.**  Under this Crisis Response Coverage, we neither have nor undertake any duty to defend, pay, or settle any "claim" or "suit" against any Insured.

## SECTION II - CRISIS RESPONSE LIMITS OF INSURANCE

**A.**  The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs," regardless of the number of Insureds, "crisis events," or "affected persons."

**B.**  The Crisis Response Aggregate Limit is the most we will pay (whether by reimbursing you or by paying on your behalf) for the sum of all "crisis response costs."

1.  The Crisis Response Aggregate Limit is separate and apart from, and not part of or subject to, any other limit of insurance stated in this policy.

2.  Our payment of "crisis response costs" under the Crisis Response Aggregate Limit does not reduce any other limit of insurance under this policy.

3.  Once exhausted, the Crisis Response Aggregate Limit can not be reinstated, extended, or increased.

## SECTION III – EXCLUSIONS

This Crisis Response Coverage does not apply to:

**A. Excluded Bodily Injury or Property Damage**

"Crisis response costs" you incur because of:

1.  "bodily injury" or "property damage" for which coverage would be excluded under any exclusion in Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM; or

2.  "imminent injury" if the threatened "bodily injury" or "property damage" is of a kind for which coverage would be excluded under any exclusion in Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM.

**B. Other Excluded Obligations**

Any obligation, damages, liability, cost, or expense for which coverage would be excluded by exclusion **B., C., D., H., L.,** or **N**. of Section **IV. EXCLUSIONS** of the COMMERCIAL UMBRELLA COVERAGE FORM, or by the Nuclear Energy Liability Exclusion.

**C. Newly acquired or merged entities**

"Crisis response costs" arising from the operations of another business or organization which you acquire or with which you merge, if those "crisis response costs" arise from a "crisis event" that began before you acquired or merged with that other business or organization.

**D. Infectious Diseases or Illnesses**

"Crisis response costs" arising out of any infectious disease or condition of ill health caused by any "biological agents". However, this exclusion does not apply to "crisis response costs" you incur because of a food-borne illness or defective vaccine.

**E. Economic or Trade Sanctions**

Any "crisis response costs" as to which our payment or reimbursement would be a violation of any economic or trade sanction enacted or imposed by the United States of America, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

## SECTION IV – DEFINITIONS

The definitions of the COMMERCIAL UMBRELLA COVERAGE FORM apply to this endorsement. The following additional definitions also apply to this coverage part:

**A.** "Affected person" means:

  **1.** an individual who suffers "bodily injury" or "property damage," or directly experiences "imminent injury"; and

  **2.** the immediate family members of a person described in **1.**, above.

**B.** "Biological agents" means:

  **1.** bacteria, mildew, mold or other fungi, other microorganisms, mycotoxins, spores or other by-products of any of the foregoing;

  **2.** viruses or other pathogens (whether or not a microorganism); or

  **3.** colony or group of any of the foregoing.

**C.** "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico, and Canada.

**D.** "Crisis event" means an event you reasonably believe has resulted, or may result, in both:

  **1.** Damages covered by this policy that are in excess of all applicable:

    **a.** "underlying insurance";

    **b.** "retained limits"; and

    **c.** other insurance; and

  **2.** Significant adverse regional or national media coverage.

**E.** "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing, that is hired by you to perform or coordinate services of a type described in the definition of "crisis response costs" in connection with a "crisis event."

**F.** "Crisis response costs" means only the following expenses incurred by the Insured in response to a "crisis event" to which this insurance applies, and which are reasonable, necessary, and directly attributable to that "crisis event":

  **1.** Expenses incurred by you to secure the scene of the "crisis event";

  **2.** Fees charged by a "crisis management firm" for its professional service or advice;

  **3.** Funeral expenses for "affected persons";

  **4.** "Emergency psychology expenses";

  **5.** Temporary living expenses for "affected persons";

6. "Emergency transport expenses"; and

7. Any other expenses approved by us.

"Crisis response costs" does not include any cost or expense to defend, pay, or settle any "claim" or "suit" against any Insured.

G. "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event," to transport an "affected person" sustaining "bodily injury" in a "crisis event" to a medical treatment facility.

H. "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons," if such services are:

1. rendered within the first fourteen (14) days after the beginning of a "crisis event"; and

2. approved by a "crisis management firm."

However, "emergency psychology expenses" do not include any cost or expense of any medication, hospitalization, or in-patient treatment.

I. "Imminent injury" means an actual and immediate threat of "bodily injury" or "property damage."

## SECTION V – CONDITIONS

Conditions **B., D., E., G., H., I., J., K., L., M., N., O.,** and **P.** of Section **VI. Conditions** of the COMMERCIAL UMBRELLA COVERAGE FORM apply to this Crisis Response Coverage. The following additional conditions also apply to this Crisis Response Coverage:

A. **Duties in the Event of A "Crisis Event"**:

1. You must see to it that we are notified of any "crisis event" within twenty-four (24) hours after it begins. If necessary, we will assist you in contacting an approved "crisis management firm," unless we agree to accept a "crisis management firm" you have selected.

2. If you seek reimbursement from us of any "crisis response costs," you must request such reimbursement in writing within ninety (90) days after you incur those "crisis response costs." Each such request for reimbursement must include invoices and/or receipts proving and describing the "crisis response costs" with reasonable particularity.

B. **Anti-Stacking Provision**

If payment or reimbursement of any "crisis response costs" provided by this Crisis Response Coverage is also provided by any other insurance issued to you by us, or by any of our affiliated companies (whether or not such costs or loss are referred to using the same terms), then the maximum limit of insurance under all such insurance shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to other insurance issued by us or any of our affiliated companies that is specifically intended to apply only in excess of the Crisis Response Aggregate Limit shown in this endorsement.

**This endorsement does not change any other provision of the policy.**



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6011
(Ed. 06 97)

## GENERAL ENDORSEMENT

### CLAIMS MADE COVERAGE ENDORSEMENT-SPECIFIED POLICIES

**I.   COVERAGE-CLAIMS MADE**

It is agreed that the insurance afforded by this policy is subject to the same terms, conditions, definitions, exclusions and warranties as contained in the claims made policy(ies) described in the Schedule of Underlying insurance and/or Item **III** below.

The foregoing shall not apply to:

**1.**   The Retroactive Date of the underlying claims made policy(ies)

**2.**   The Extended Reporting Period of the underlying claims made policy(ies).

**II.   RETROACTIVE DATE**

The Retroactive Date for this Policy is  __determined__  per the underlying policy(ies) described in III.CLAIMS MADE CLAUSE.
(In the absence of an entry, the Retroactive Date will be the date this policy takes effect.)

This insurance does not apply to:

**1.**   "Bodily injury" or "property damage" which occurs before the Retroactive Date or after the end of the policy period, or

**2.**   "personal injury" or "advertising injury" caused by an offense committed before the Retroactive Date or after the end of the policy period.

### III. CLAIMS MADE CLAUSE

This policy shall apply to claims first made against the "Insured" and reported to the Company during the policy period for which coverage is provided for the following described underlying claims made policy(ies).

|     **Insurance Company**     |     **Policy Number**     |
|---|---|

Per the individual Certificate of Coverage, underlying claims-made Employee Benefits Liability policy(ies) and/or Director & Officers Liability policy(ies).

All "claims" for damages because of "bodily injury", "personal injury" and "advertising injury" to the same person or organization, including damages claimed by any person or organization for care, loss of services or death resulting at any time from "bodily injury", will be deemed to have been made at the time the first of those "claims" is made against any "Insured".

All "claims" for damages because of "property damage" causing loss to the same person or organization as a result of an "occurrence" will be deemed to have been made at the time the first of those "claims" is made against any "Insured".

**IV.   EXTENDED REPORTING PERIODS**

**1.**   The Company will provide one or more Extended Reporting Periods, as described below, if:

**(a)** this policy is cancelled or not renewed; or

**(b)** the Company renews or replaces this policy with insurance that:

    **(1)** has a Retroactive Date later than the date stated above in this Endorsement; or

    **(2)** does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" on a claims made basis.

The quotation of a different premium and/or Limit of Insurance does not constitute a cancellation or refusal to renew for the purpose of this provision.

**2.** Extended Reporting Periods do not extend the policy period, increase the Limits of Insurance or change the scope of coverage provided. They apply only to "claims" for:

**(a)** "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date; or

**(b)** "Personal injury" or "advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date.

Once in effect, Extended Reporting Periods may not be cancelled.

**3.** Sixty (60) Day Automatic Extended Reporting Period:

A Sixty (60) Day Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period or the effective date of any cancellation and lasts for sixty (60) days.

This period does not apply to "claims" that are covered under any subsequent insurance the "Insured" purchases or that would be covered but for the exhaustion of the amount of insurance applicable to such "claims".

**4.** Optional Extended Reporting Period:

The above Sixty (60) Day Extended Reporting Period may be substituted by an Extended Reporting Period Endorsement for a period of **(equal to that period indicated on the underlying claims-made policy(ies) described in III.CLAIMS MADE CLAUSE)** months from the end of the policy period or the effective date of any cancellation. If the "Insured" makes a written request for an Extended Reporting Period within sixty (60) days after the end of the policy period or the effective date of any cancellation and pays the additional premium of **150%** of the one year premium hereunder within said sixty (60) days. If such request and premium payment are not so given to the Company, the Insured shall not at a later date be able to exercise such right.

The insurance provided by the Extended Reporting Period shall be excess over any other valid and collectible insurance available to the "Insured" whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Extended Reporting Period Coverage provided hereunder takes effect.

The premium for the Extended Reporting Period endorsement will be fully earned when the endorsement takes effect.

As a condition precedent to the "Insured"'s right to purchase the Extended Reporting Period Coverage, the full policy premium (including any additional premiums) of this policy must have been paid.

**V.      DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

GAI 6011
(Ed. 06 97)

The "Insured" shall give prompt written notice to the Company of an "occurrence" or an offense which may result in a "claim" under this policy. Such notice shall contain fullest information obtainable at the time.

If a "claim" is made or "suit" is brought against any "Insured", the "Insured" shall give prompt written notice of the "claim" or "suit" and forward every demand, notice, summons or other process received. If during the Extended Reporting Period (if purchased by the "Insured" in accordance with the terms of this Endorsement), the "Insured" shall become aware of any "occurrence" or offense which might give rise to a "claim" against the "Insured" under this policy, then the "Insured" shall give prompt written notice to the Company, together with the fullest Information obtainable.

Any "claim" that subsequently may be made against the "Insured" arising out of such "occurrences" or offenses shall be deemed for the purposes of this insurance, to have been made on the last date of the policy period or date of cancellation; provided that the "claim" is for "bodily injury", "property damage", "personal injury", or "advertising injury" that occurred before the end of the policy period or date of cancellation but not before the Retroactive Date.

Notice of the foregoing shall be given by the "Insured" or its authorized representatives, to the Company at its Home Office.

VI.    **APPLICATION**

By acceptance of this policy, the "Insured" agrees that the statement in the application are the "Insured"'s representations and that this policy embodies all agreements existing between the Insured and the Company relating to this insurance.

**This endorsement does not change any other provision of the Policy.**



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6478**
(Ed. 04 03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## UNDERLYING SUBLIMITS ENDORSEMENT

The following is added to **SECTION II - LIMITS OF INSURANCE:**

If any policy listed in the Schedule of Underlying Insurance affords coverage for any "claim," "suit," or "occurrence" subject to a sublimit that is less than the amount shown as the applicable limit of insurance for that policy in the Schedule of Underlying Insurance, then the "retained limit" will be calculated as if such sublimit equaled the full applicable limit of insurance shown for that policy in the Schedule of Underlying Insurance. The "retained limit" will not be reduced on account of any such sublimit.

We will have no duty to investigate any "claim," defend any "suit," pay any sum, or assume any obligation within the "retained limit," or to drop down and replace any part of the "retained limit," on account of any such sublimit.

This endorsement does not change any other provision of the policy.

GAI 6478 (Ed. 04/03) XS



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6129**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL INJURY - FOLLOWING FORM

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

GAI 6129 (Ed. 06/97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6047**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADVERTISING INJURY - FOLLOWING FORM**

The following exclusion is added to Section **IV. EXCLUSIONS:**

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "advertising injury," except to the extent that such insurance is provided by a policy listed in the Schedule of "Underlying Insurance" and for no broader coverage than is provided by such coverage.

This endorsement does not change any other provision of the policy.

GAI 6047 (Ed. 06/97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 6113**
(Ed. 06  97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CONTRACTUAL LIABILITY - FOLLOWING FORM**

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability assumed by any "Insured" under any "insured contract," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

GAI 6113 (Ed. 06/97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

**GAI 6106**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AUTO LIABILITY - FOLLOWING FORM

The following exclusion is added to Section **IV - EXCLUSIONS**:

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

GAI 6106 (Ed. 06/97) XS



Administrative Offices
301 E. 4th St.
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 71 64 (Ed. 05/11) XS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DIRECTORS AND OFFICERS LIABILITY FOLLOWING FORM
## (INCLUDING EMPLOYMENT RELATED PRACTICES
## AND FOLLOWING FORM WRONGFUL ACT DEFINITION)

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

The following exclusion is added to Section **IV - EXCLUSIONS**:

1. Any liability arising out of or related in any way, either directly or indirectly, to any "wrongful act" of any director or officer of any "Insured" in the discharge or performance of any duties as such a director or officer, except to the extent that such insurance is provided by the policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

2. Exclusion **O.** is deleted from Section **IV - EXCLUSIONS** and replaced by the following:

   "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

   **a.** refusal to employ or promote;

   **b.** termination of employment;

   **c.** coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination, malicious prosecution directed at that person; or other employment related practices, policies, acts or omissions; or

   **d.** consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of **a.** through **c.**

This exclusion applies whether the injury-causing event described in **a.** through **d.** occurs before employment, during employment or after employment of that person, and whether the "Insured" may be held liable as an employer or in any other capacity, and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

This exclusion does not apply to the extent that insurance is provided by the policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

The definition of "wrongful act", as used in this endorsement, is the same as the definition used by the policy listed in the Schedule of Underlying Insurance.

**This endorsement does not change any other provision of the policy.**

GAI 71 64 (Ed. 05/11) XS                         (Page 1 of 1)



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

GAI 6136
(Ed. 06  97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PUNITIVE OR EXEMPLARY DAMAGES - FOLLOWING FORM

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any award of, or liability for, punitive or exemplary damages, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

GAI 6136 (Ed. 06/97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6153**
(Ed. 06  97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

GAI 6153 (Ed. 06/97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6135**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROFESSIONAL LIABILITY EXCLUSION

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service.

This endorsement does not change any other provision of the policy.

GAI 6135 (Ed. 06/97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6442**
(Ed. 01 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FUNGI, MOLD OR SPORES EXCLUSION

The following is added to **Section IV - EXCLU-SIONS:**

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to:

1. Any actual, alleged or threatened exposure to, existence of, presence of, ingestion of, inhalation of or contact with any "fungi," mold or "spores," whether or not occurring alone, in combination with, before, after or concurrently with any other cause, contributing condition or circumstance, or aggravating factor, whether manmade, natural, or any combination of manmade or natural.

2. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of any "fungi," mold or "spores." This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person or group of persons.

3. Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of any "fungi," mold or "spores."

This exclusion applies regardless of whether or not the "fungi," mold or "spores," or any of their effects, were sudden, accidental, gradual, intended, expected, unexpected, preventable, not preventable, manmade, naturally occurring, or any combination of the foregoing.

As used in this exclusion:

"Fungi" include, but are not limited to, any of a major group of saprophytic and parasitic spore-producing organisms usually classified as plants that lack chlorophyll including, but not limited to, molds, rusts, mildews, smuts, mushrooms, and yeasts, and any toxins, mycotoxins, "spores," scents, waste products or byproducts produced or released by "fungi," mold or "spores," or by the metabolism, death or decay of any "fungi," mold or "spores."

"Spores" include, but are not limited to, any reproductive body produced by or arising out of any "fungi."

This endorsement does not change any other provision of the policy.

F 83720 (3/2011)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6127**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NON-BUSINESS ACTIVITIES EXCLUSION**

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability for or arising out of any domestic or non-business activities of any "Insured."

This endorsement does not change any other provision of the policy.

GAI 6127 (Ed. 06 97) XS



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

GAI 6333
(Ed. 06  97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

The following exclusion is added to Section **IV - EXCLUSIONS:**

1. any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

    a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any

    b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.

GAI 6333 (Ed. 06/97) XS

F 89720 (3/2011)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6011
(Ed. 06 97)

## GENERAL ENDORSEMENT

**EXCLUSION OF "CLAIMS" AND "SUITS" ALLEGING INFRINGEMENT OF INTELLECTUAL PROPERTY**

This endorsement applies to insurance under the:

**COMMERCIAL UMBRELLA COVERAGE FORM**

The following is added to **IV. EXCLUSIONS**:

**A.** Any "claim" or "suit" that alleges "personal injury" or "advertising injury" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any one or more of the following rights or laws:

    1.    copyright;

    2.    patent;

    3.    trademark;

    4.    trade name;

    5.    trade secret;

    6.    trade dress;

    7.    service mark;

    8.    slogan;

    9.    service name;

    10.   claim of authorship;

    11.   other right to or law recognizing an interest in any expression, idea, likeness, name, style of doing business, symbol, or title;

    12.   laws or regulations concerning piracy, unfair competition, unfair trade practices, or other similar practices; or

    13.   any other intellectual property right or law.

    This exclusion applies whether such misappropriation, infringement, or violation is committed in your advertisement or otherwise.

**B.** Any other "bodily injury," "property damage," "personal injury" or "advertising injury," or medical expenses alleged in a "claim" or "suit" that also alleges any misappropriation, infringement, or violation excluded by paragraph **A.** of this exclusion.

**This endorsement does not change any other provision of the Policy.**



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 71 19 (Ed. 02 10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF POLLUTION EXCLUSION –
## EXCEPTION FOR NAMED PERIL OF HOSTILE FIRE; BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT AND WATER HEATING EQUIPMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

Exclusion **L.** is deleted from Section **IV. – EXCLUSIONS** and is replaced by the following:

Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused.

2. Any request, demand, or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons.

3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

This exclusion does not apply to:

1. "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" at any "Insured's" premises or job location; or

2. "bodily injury" if sustained within a building and caused by smoke, fumes, vapor, or soot from equipment used to heat, cool or dehumidify that building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

As used in this exclusion:

"Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**This endorsement does not change any other provision of the policy.**

GAI 71 19 (Ed. 02/10)                    (Page 1 of 1)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6474
(Ed. 03 03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WAR LIABILITY EXCLUSION

Exclusion **M.** is deleted from **SECTION IV - EXCLUSIONS** and is replaced by the following:

**M.** "Any injury or damage," however caused, arising, directly or indirectly, out of:

  (1) war, including undeclared or civil war; or

  (2) warlike action by military force, including action of hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

As used in this exclusion:

**"Any injury or damage"** means any injury or damage covered under any policy, Coverage Part, or "underlying insurance" to which this endorsement is applicable, and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "loss," "injury" or "environmental damage" as may be defined in any applicable policy, Coverage Part, or "underlying insurance."

This endorsement does not change any other provision of the policy.

F 83720 (3/2011)



Administrative Offices
301 E 4th Street
Cincinnati  OH  45202-4201
513 369 5000 ph

GAI 6819
(Ed. 10  04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to:

1. Any actual, alleged or threatened exposure to, existence of, presence of, ingestion of, inhalation of or contact with "silica" or dust that includes or contains "silica," whether or not occurring alone, in combination with, before, after, or concurrently with any other cause, contributing condition or circumstance, or aggravating factor, whether manmade, natural, or any combination of manmade or natural.

2. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "silica" or dust that includes or contains "silica." This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person or group of persons.

3. Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "silica" or dust that includes or contains "silica."

This exclusion applies regardless of whether or not the "silica" or dust that includes or contains "silica," or any of their effects, were sudden, accidental, gradual, intended, expected, unexpected, preventable, not preventable, manmade, naturally occurring, or any combination of the foregoing.

As used in this exclusion:

"Silica" means silicon dioxide ($SiO_2$) in any form, from any source.

**This endorsement does not change any other provision of the policy.**

F 83720 (3/2011)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6011
(Ed. 06 97)

# GENERAL ENDORSEMENT

### BROAD NAMED INSURED

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

Under Section **V.DEFINITIONS, F.** is deleted in its entirety and replaced with the following:

**J.** "Insured" means each of the following, to the extent set forth:

1. The Named Insured, meaning:

    a. The Named Insured listed in Item 1. of the Declarations is changed to the following:

    All members of the Distinguished Properties Umbrella Managers, Inc. risk purchasing group, as scheduled on the individual certificate of coverage and or the schedule of named insureds attached thereto.

    (Information required to complete this Schedule, if not shown above, will be shown in the Declarations).

    b. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, will qualify to be a Named Insured.

2. Any company, parent, subsidiary entity, trust, partnership, limited liability company or joint venture for which the Named Insured has the responsibility for placing insurance. This includes any company or corporation not defined as a Named Insured as stated in 1.b. above.

However, the following items (1) and (2) apply to Provision 1. and 2. above:

(1) coverage does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

(2) coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such "underlying insurance".

3. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

4. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

5. If you are a limited liability company, the members or managers but only as respects the conduct of your business.

GAI 6011
(Ed. 06 97)

6. Any person or organization, other than the Named Insured, included as an additional "Insured" solely by virtue of an "insured contract", or a contract that includes an "insured contract", and to which coverage is provided by the "underlying insurance", and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured". The Limits of Insurance applicable to the additional "Insured" are the lesser of those specified in the Declarations of this policy or those specified in the "insured contract" or a contract that includes an "insured contract" less the applicable "underlying insurance". The Limits of Insurance applicable to the additional "Insured" are included within, and no in addition to, the Limits of Insurance shown in the Declarations.

7. Any of your partners, executive officers, directors, or employees, but only while acting within the scope of their duties. However, the coverage granted by this subparagraph 7. does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos", aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such "underlying insurance". Employees include "leased workers" but no "temporary workers". "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties to the conduct of your business. "Leased workers" are not "temporary workers". "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

8. Any person, other than one of your employees, or organization while acting as your real estate manager.

9. Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission. However, the coverage granted by this subparagraph 9. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

**This endorsement does not change any other provision of the Policy.**



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

GAI 6452
(Ed. 01 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM
EXCESS LIABILITY

The following is added to **SECTION II - LIMITS OF INSURANCE**:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an

act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement does not change any other provision of the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
F 89720 (3/2011)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

**GAI 6869**
(Ed. 08 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NUCLEAR, BIOLOGICAL, OR CHEMICAL EXCLUSION**

The following exclusion is added to **Section IV - EXCLUSIONS**:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to:

1. Any actual, attempted, suspected, or threatened use of any "NBC material" as part of any plan, effort, or design, actually or apparently intended to cause any:

   (a) loss or damage to any tangible or intangible property, or

   (b) bodily injury, physical injury, sickness, or disease, including death of a person, or

   (c) mental injury, mental anguish, emotional distress, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

2. Any actual, attempted, suspected, or threatened presence, spread, dissemination, release, escape, or distribution of any "NBC material" as a direct or indirect result of any actual, attempted, suspected, or threatened plan, effort, or design, actually or apparently intended to cause any:

   (a) loss or damage to any tangible or intangible property, or

   (b) bodily injury, physical injury, sickness, or disease, including death of a person, or

   (c) mental injury, mental anguish, emotional distress, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

3. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "NBC material." This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person or group of persons.

4. Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "NBC material."

This exclusion applies regardless of whether or not the "NBC material," or any of their effects, were sudden, accidental, gradual, intended, expected, unexpected, preventable, not preventable, manmade, naturally occurring, or any combination of the foregoing.

As used in this exclusion:

"NBC material" means any nuclear, biological, or chemical material or substance that causes damage to property or is harmful to human health. "NBC material" includes, but is not limited to:

1. any radioactive substance or material, and the radiation it releases,

2. any pathogen, bacterium, microbe, virus, or other organism,

**3.** any substance or material produced by or from any pathogen, bacterium, microbe, virus, or other organism, and

**4.** any poison, toxin, or other harmful chemical, substance, or material.

The foregoing list **1.** through **4.** is only illustrative, and should not be construed as a complete, exclusive, or exhaustive list of all "NBC materials."

**This endorsement does not change any other provision of the policy.**



GREAT**AMERICAN**.
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph
F 8972D (3/2011)

**GAI 6475**
(Ed. 01 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ACT OF TERRORISM RETAINED LIMIT**

This endorsement modifies insurance provided under the following:

    COMMERCIAL UMBRELLA COVERAGE FORM
    SAFEPAK UMBRELLA LIABILITY COVERAGE FORM

The policy is amended as follows:

**A.**    **ITEM 5.** of the **DECLARATIONS - SELF-INSURED RETENTION** is amended to include the following Self-Insured Retention:

    **Act of Terrorism Self-Insured Retention:**

        **Each Occurrence – None**

**B.**    **SECTION II - LIMITS OF INSURANCE - G. - RETAINED LIMIT** is deleted in its entirety and replaced by the following:

    We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

    **1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

    **2.** the amount stated in the Declarations as Self-Insured Retention or Act of Terrorism Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

And then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

All "claims" and "suits" seeking damages for any liability out of an "act of terrorism" are subject to the Act of Terrorism Self-Insured Retention. "Defense expenses" shall not erode the Act of Terrorism Self-Insured Retention.

The Act of Terrorism Self-Insured Retention applies whether or not there is any applicable underlying policies listed in the Schedule of Underlying Insurance or applicable limits of any other underlying insurance providing coverage to the "Insured." If there is applicable underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the "Insured," amounts received through such underlying insurance may be applied to reduce or exhaust the Act of Terrorism Self-Insured Retention. However, in no event will amounts received through such underlying insurance for the payment of "defense expenses" reduce the Act of Terrorism Self-Insured Retention.

**C.** For the purposes of this endorsement, the following definitions are added to **SECTION V - DEFINITIONS**:

**1. "Defense expenses"** means any payment allocated to a specific loss, "claim" or "suit" for its investigation, settlement or defense, including but not limited to:

**a.** attorney's fees and all other investigation, loss adjustment and litigation expenses;

**b.** premiums on bonds to release attachments;

**c.** premiums on appeal bonds required by law to appeal any "claim" or "suit";

**d.** costs taxed against the "Insured" in any "claim" or "suit";

**e.** pre-judgment interest awarded against the "Insured";

**f.** interest that accrues after entry of judgment.

**2.** "Act of terrorism" is defined as:

**a.** A **"certified act of terrorism"** means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Risk Insurance Act for a "certified act of terrorism" include the following:

**i.** the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**ii.** the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an e f f o r t to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.** Solely as respects any liability arising out of any "act of terrorism," **SECTION III. - DEFENSE, Paragraphs A.1.** and **A.2.**, are deleted in their entirety, and replaced by the following:

**A.** We will have the right and duty to defend any "claim" or "suit" seeking damages covered by the terms and conditions of this policy when the applicable Act of Terrorism Self-Insured Retention limit has been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies.

This endorsement does not change any other provision of the policy.



Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
513 369 5000 ph

GAI 6458
(Ed. 01 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM
EXCESS LIABILITY

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

**A.** This insurance does not apply to:

**Terrorism Punitive Damages**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "loss," "injury" or "environmental damage" as may be defined in any applicable Coverage Part or "underlying insurance."

**2.** **"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Sec-

retary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement does not change any other provision of the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.



Administrative Offices
301 E. 4th Street
Cincinnati, Ohio 45202-4201
Tel: 1-513-369-5000

IL 72 68 (Ed 09 09)

# In Witness Clause

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

**President**

**Secretary**



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
£13 369 5000 ph

IL 73 24 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

## ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

IL 73 24 (Ed. 08/12)



Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

# COMMERCIAL UMBRELLA AND EXCESS LIABILITY
## NOTICE TO POLICYHOLDERS
### RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of any significant restrictions of coverage that were made in each policy form and endorsement.

The endorsements below replace the current war exclusion to expand beyond contractually assumed liabilities or introduce a war exclusion in forms which did not contain one.

Please read your policy, and the endorsements attached to your policy, carefully.

**GAI 6474 03 03 - War Liability Exclusion (Commercial Umbrella Policy, Safepak Umbrella Coverage Part or Policy)**

When this endorsement is attached to your policy, coverage is restricted to exclude any injury or damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared civil war;
* warlike action by military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**GAI 6650 03 03 - War Liability Exclusion (Excess Liability Policy)**

When this endorsement is attached to your policy, a war exclusion is added to exclude any injury or damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared civil war;
* warlike action by military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**GAI 6651 03 03 - War Liability Exclusion (Excess Liability Policy)**

When this endorsement is attached to your policy, a war exclusion is added to exclude any injury or damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared civil war;
* warlike action by military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**AR 84 82 03 03 - War Liability Exclusion (Agriguard Farm Catastrophe Liability Coverage Part or Policy)**

When this endorsement is attached to your policy, coverage is restricted to exclude any injury or damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared civil war;

* warlike action by military force; or

* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.



GREAT AMERICAN
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH  45202-4201
613 369 5000 ph

GAI 6847
(Ed. 12 06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

The following exclusion is added to **SECTION IV - EXCLUSIONS:**

A. Applicability Of The Provisions Of This Endorsement

  1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this policy or Coverage Part; or

    b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

  2. If the provisions of this endorsement become applicable, such provisions:

    a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism," but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date which the provisions of this endorsement become applicable); and

    b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

  3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism," will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

Includes copyrighted material of ISO Properties, Inc., with its permission.
GAI 6847 (Ed. 12/06) XS              (Page 1 of 3)

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any policy, Coverage Part or "underlying insurance" to which this endorsement is applicable, and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "loss," "injury" or "environmental damage" as may be defined in any applicable policy, Coverage Part, or "underlying insurance."

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism," including action in hindering or defending against an actual or expected incident of "terrorism." "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be

Includes copyrighted material of ISO Properties, Inc., with its permission.

deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to

that incident. When the Exclusion applies to an incident of "terrorism," there is no coverage under this policy or Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this policy or Coverage Part.

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of ISO Properties, Inc., with its permission.

GAI 6847 (Ed. 12/06) XS                    (Page 3 of 3)



**GREAT**AMERICAN.
INSURANCE GROUP

Administrative Offices
301 E 4th Street
Cincinnati OH 45202-4201
513 369 5000 ph

## COMMERCIAL UMBRELLA AND EXCESS LIABILITY
## NOTICE TO POLICYHOLDERS
## POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE

This Notice has been prepared in conjunction with the POTENTIAL implementation of changes related to coverage of terrorism under your Policy.

The Terrorism Risk Insurance Act established a program (Terrorism Risk Insurance Program) within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. That Program is subject to a termination date of December 31, 2014 unless extended by the federal government. If the federal Program terminates, or is extended with certain changes prior to or during the term of your Policy, then the treatment of terrorism under your policy will change. This Notice is being provided to you for the purpose of summarizing potential impact on your coverage. The summary is a brief synopsis of significant exclusionary provisions and limitations.

This Notice does not form a part of your insurance contract. The Notice is designed to alert you to coverage restrictions and to other provisions in certain terrorism endorsement(s) in this Policy. If there is any conflict between this Notice and the Policy (including its endorsements), the provisions of the Policy (including its endorsements) apply.

Carefully read your Policy, including the endorsements attached to your policy.

**Potential Change During the Term of Your Policy:**

Endorsement GAI 6847/GAI 6851/GAI 6855/GAI 6860 is attached to your Policy. Its provisions will become applicable to your Policy only if certain events (one or more of them) occur. Those events include the following:

- If the federal Terrorism Risk Insurance Program (TRIP) terminates with respect to the type of insurance provided under this Policy. (TRIP is/was scheduled to terminate at the end of December 31, 2014 unless extended by the Federal Government.); or

- If TRIP is extended with changes that redefine terrorism, and we are not required to make such revised coverage available to you; or

- If TRIP is extended with changes that make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other events or occurrences under this policy, and we are not required to make such revised coverage available to you; or

- If TRIP is extended with changes that increase insurers' statutory percentage deductible under TRIP for terrorism losses, or decrease the Federal Government's statutory percentage share in potential terrorism losses, and we are not required to make terrorism coverage available to you.

Endorsement GAI 6847/GAI 6851/GAI 6855/GAI 6860 treats terrorism as follows:

- Coverage for injury or damage arising out of a terrorism incident is excluded only if:

- the total of all insured damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from the incident, exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or

- fifty or more persons sustain death or serious physical injury; or

  (To determine whether the threshold for property damage ($25 million) and persons injured (fifty) is exceeded, multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)

- the terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or

- the terrorism event involves the release of radioactive material, and it appears that one purpose of the terrorism was to release such material; or

- the terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

- the terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

**See the definition of terrorism for purposes of the terrorism exclusion.**

*Depth in Leadership. Trusted Partnership.*

## IRONSHORE
*your safe harbour*

### IRONSHORE INDEMNITY, INC.

(A Stock Company)
Mailing Address:
PO Box 3407
New York, NY 10008
(877) IRON411

## COMMERCIAL EXCESS LIABILITY POLICY DECLARATIONS

| | | | |
|---|---|---|---|
| **Policy Number:** | 001734500 | **NEW/RENEWAL OF:** | 001386500 |

**Item 1.**   **Named Insured &**      Distinguished Properties Umbrella Managers, Inc.
             **Mailing Address:**        c/o 3H Corporate Services, LLC
                                        1201 N. Orange Street, Suite 710
                                        Wilmington, DE 19801-1186

**Item 2.**   **Policy Period:**      **Effective:** September 01, 2013    **Expiration:** September 01, 2015
                                      12:01 a.m. time at your mailing address shown above

**Item 3.**   **Limits Of Liability**

   a. Per Occurrence, Per Claim or Per Loss  (as in      $15,000,000 (Maximum Limt per Certificate Holder)
      Controlling underlying Policy)

   b. Aggregate, where applicable                        $15,000,000 (Maximum Limt per Certificate Holder)

   (Per Schedule of Underlying Policies (See Endorsement No. 1)

**Item 4.**   **Limits Of Underlying Policy**

   a. Per Occurrence, Per Claim or Per Loss               $10,000,000

   b. Aggregate, where applicable                         $10,000,000

   Per Schedule of Underlying Policies (See Endorsement No. 1)

**Item 5.**   **Controlling Underlying Policy**

   Company                                  See Endorsement No. 1

   Policy Number

   Insurer

   Coverage

   Policy Period

   Limit of Liability

EFF.DEC.001 (0509)                                                    Page 1 of 3

Item 6.

**Policy Premium:**

|  |  |
|---|---|
| | $1.00 |
| Premium for Acts of Terrorism (TRIA): | Included |
| Total Premium (including TRIA): | $1.00 |
| | |
| Minimum Premium: | $1.00 |

Item 7.    **Producer & Mailing Address:**

Neal Sullivan
Distinguished Programs Insurance Brokerage, LLC
1180 Avenue of the Americas, 16th Floor
New York, NY    10036

Item 8.    NOTICES TO THE INSURER:

(a)    All notices as required under Section VI.H.1:  Claims Department
(b)    All other notices:    Underwriting Department
At the address and numbers shown at the top of the Declarations Page.

Item 9.    **Policy Coverage Form:**    Program Only - EFF.COV.001 (0311) Commercial Excess Liability Policy
**Endorsements:**    **SEE SCHEDULE OF ENDORSEMENTS**

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, FOR THIS POLICY AND THE
FOLLOWED POLICY, INCLUDING INFORMATION FURNISHED IN CONNECTION THEREWITH WHETHER DIRECTLY OR
THROUGH PUBLIC FILING, AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

Date:  July 26, 2013
        MO/DAY/YR.                                              Authorized Representative

Named Insured:        Distinguished Properties Umbrella Managers, Inc.

Policy Number:        001734500

Effective 12:01 AM:   September 01, 2013

## SCHEDULE OF ENDORSEMENTS

### Endorsement Number - Form Number – Edition Date – Form Name

1. EFF.END.001 (0610) Schedule of Underlying Insurance
2. EFF.END.003 (0610) Named Insured
3. EFF.END.004 (0610) Claims Notification
4. EFF.END.005 (0610) Pro Rata Cancellation
5. EFF.END.006 (0610) Commercial Excess Liability Amendment of Conditions
6. EFF.END.007 (0610) Employment Practices Liability
7. EFF.END.009 (0610) Excess Follow Form Notice of Cancellation
8. EFF.END.010 (0610) DPU General Changes
9. EFF.END.012 (0610) Risk Purchasing Group Modified
10. EFF.END.013 (0610) Violation of Economic or Trade Sanctions
11. EFF.END.016 (0610) Act of Terrorism Retention
12. EFF.END.002 (0610) Policy Changes -  Non Drop-Down Endorsement
13. EFF.MANU.001 Crisis Response Coverage Exclusion

EFF.DEC.001 (0509)                                                Page 3 of 3

*People in Leadership. Insured Partnership.®*

**IRONSHORE**
*your safe harbour®*

## IRONSHORE INDEMNITY, INC.

(A Stock Company)
Mailing Address:
PO Box 3407
New York, NY 10008
(877) IRON411

(Hereinafter referred to as the "Insurer")

## COMMERCIAL EXCESS LIABILITY POLICY

Policy Number: 001734500

In consideration of the payment of premium and in reliance upon the statements in the Declarations of this Policy, the Insurer agrees as follows:

**I. COVERAGE**

    **A.** This Policy shall provide the Insured with Commercial Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the Controlling Underlying Policy, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy, including any and all endorsements attached hereto, inconsistent with or supplementary to the Controlling Underlying Policy.

**II. LIMITS OF LIABILITY**

    **A.** Where an amount is shown for the aggregate limit of liability in Item 3 of the Declarations of this Policy, the amount stated is the most the Insurer will pay for all damages covered under this Policy with respect to coverage subject to an aggregate limit of liability in the Controlling Underlying Policy. The aggregate limit(s) of liability under this Policy apply in the same manner as the aggregate limit(s) of liability in the Controlling Underlying Policy.

    **B.** Subject to A. above, the per occurrence, per claim, or per loss limit of liability stated in Item 3 of the Declarations of this Policy is the most the Insurer will pay for all damages arising out of any one occurrence, claim or loss as stated in the Controlling Underlying Policy.

    **C.** Defense costs to which this Policy applies shall not reduce the limits of liability stated in A. and B. above, except to the extent defense costs covered under any Underlying Policy reduce the limits of liability of such Underlying Policy.

**III. RETENTION**

    **A.** The Limits of Liability stated in Item 3 of the Declarations of this Policy apply in excess of:

        **1.** The total of the limits of liability of the Underlying Policies applicable on a per occurrence, per claim or per loss basis, but in no event in an amount less than the total of the per occurrence, per claim or per loss limits of liability of the Underlying Policies stated in Item 4 of the Declarations of this Policy.

        **2.** The total of the limits of liability of the Underlying Policies applicable on an aggregate basis, where an b amount is shown in the aggregate limit of liability of the Underlying Policies stated in Item 4 of the Declarations of this Policy, but in no event in an amount less than the aggregate limits of liability of the Underlying Policies stated in Item 4 of the Declarations of this Policy.

    **B.** This Policy will not apply in excess of any reduced or exhausted limits of liability of the Underlying Policies to the extent that such reduction or exhaustion is caused by:

    1. Payment of amounts on account of occurrences, claims or loss that are not covered under this Policy; or

    2. Uncollectibility in whole or in part of the limits of liability of an Underlying Policy.

**C.** Notwithstanding B.1. above, defense costs incurred by any Underlying Policy shall not reduce the limits of liability of such Underlying Policy, except to the extent defense costs reduce the limits of liability of an Underlying Policy, in which case they will reduce the limits of liability under this Policy.

**IV.**    **EXCLUSIONS**

This Policy shall not apply to liability:

**A. ASBESTOS**

Arising out of or relating in any way to:

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

**B. WAR OR MILITARY ACTION**

Arising directly or indirectly, out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, strike, riot, civil commotion or action taken by governmental authority in hindering or defending against any of these regardless of any other cause or event that contributes concurrently or in sequence to injury or damage.

**C. OTHER LAWS**

Arising out of or relating in any way to:

1. The Employee Retirement Income Security Act of 1974 (ERISA) as now or hereafter amended; or

2. Any claim or claims made by or against the Insured with respect to any uninsured/underinsured motorist or automobile no fault or first party personal injury law;

**D. EMPLOYMENT-RELATED PRACTICES LIABILITY**

Arising out of any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity, and to any obligation to share damages with or to repay someone else who must pay damages because of injury or damage arising out of the employment-related practices, policies, acts or omissions described in the paragraph above.

**E. NUCLEAR LIABILITY**

1. With respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability;

2.  Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law; (b) the Insured is, or had this Policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

3.  Resulting from the hazardous properties of nuclear material if:

    (a)  the nuclear material (i) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (ii) has been discharged or dispensed therefrom;

    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

    (c)  the liability arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to injury to or destruction of such nuclear facility and any property thereat.

4.  As used in this exclusion:

    a.  "hazardous properties" includes radioactive, toxic or explosive properties;

    b.  "nuclear material" means source material, special nuclear material or by-product material;

    c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any amendment or revision thereto;

    d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by   any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.  "nuclear facility" means:

        i)  any nuclear reactor;

        ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

        iii)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

        Includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    h.  injury to or destruction of property includes all forms of radioactive contamination of property.

V.  DEFINITIONS

The following Definitions apply to this Policy:

    A.  Controlling Underlying Policy means the policy described in Item 5 of the Declarations of this Policy.

B.   Underlying Policies means each of the policies that are scheduled in the Schedule of Underlying Policies in Item 4 of the Declarations of this Policy and any other applicable underlying insurance, including any self-insured retentions or retained limits.

## VI.   CONDITIONS

### A.   CONSENT TO JURISDICTION

1.   The Insurer, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to commence an action in any Court of competent jurisdiction of the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the party named in Item 7 of the Declarations of this Policy, and that in any suit instituted against the Insurer to effectuate arbitration or to enforce any award entered in such arbitration, the Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

2.   The party named in Item 7 of the Declarations of this Policy is authorized and directed to accept service of process on behalf of the Insurer in any suit or action within the scope of this Condition A. or upon the request of the Insured to give a written undertaking to the Insured that such party will enter a general appearance on the Insured's behalf in the event such a suit shall be instituted.

3.   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in, any suit or action by the Insured within the scope of this Condition A., and hereby designates the party named in Item 7 of the Declarations of this Policy as the person to whom the said officer is authorized to mail such process or a true copy thereof.

### B.   CANCELLATION CLAUSE

1.   This policy may be cancelled by the first Named Insured stated in Item 1 of the Declarations either by mailing or delivering advance written notice to the Insurer stating where the cancellation is to take effect. This policy may be cancelled by the Insurer by mailing to such first Named Insured at the address shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, ten (10) days thereafter if cancellation is for non-payment of premium, such cancellation is to take effect. Proof of mailing of notice of cancellation shall be sufficient proof of notice and the effective date of cancellation stated in the notice will become the end of the policy period. Delivery of written notice either by the first Named Insured or by the Insurer shall be equivalent to mailing. If the first Named Insured cancels, earned premium will be computed in accordance with the customary short-rate table and procedure, but the Insurer will always be entitled to receive or keep the Minimum Premium amount stated in Item 6. of the Declarations. If the Insurer cancels, earned premium will be computed pro rata based on the time this policy was in force.

2.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if the Insurer has not made or offered any refund due. The Insurer's or its representative's check, mailed or delivered to the first Named Insured, will be sufficient tender of any refund due.

3.   The first Named Insured stated in Item 1 of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

C.  ASSISTANCE AND COOPERATION

1.  The Insurer shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the Insured to which this Policy may apply upon exhaustion of the applicable limits of liability of the Underlying Policies. If the Insurer has exercised such right, it may withdraw from the defense and tender the defense to the Insured upon exhaustion of the applicable limits of liability under this Policy. If the Insurer does not exercise the right to assume charge of such defense or settlement, or if the applicable limits of liability of the Underlying Policies are not exhausted, the Insurer shall have the right and shall be given the opportunity to associate effectively with the Insured or the underlying insurer or both in the defense and control of any claim or suit likely to involve this Policy. In such events, the Insured, the underlying insurer and the Insurer shall cooperate in the defense of such claim or suit.

2.  The Insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for any an amount to which this Policy applies without the Insurer's written consent.

D.  APPEALS

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable limits of Underlying Insurance, the Insurer may elect to do so. If the Insurer appeals, it will be liable, in addition to the applicable Limits of Insurance of this policy, for all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Liability of this Policy incidental to such an appeal.

E.  CHANGES IN CONTROLLED UNDERLYING POLICY

If during the Policy Period of this Policy, the terms, conditions, exclusions or limitations of the Controlling Underlying Policy are changed in any manner from those in effect on the Inception Date of this Policy, the Insured shall, as a condition precedent to its rights under this Policy, give to the Insurer as soon as practicable written notice of the full particulars thereof. This Policy shall become subject to any such changes upon the effective date of the changes in the Controlling Underlying Policy, but only upon the condition that the Insurer agrees to follow such changes in writing, and the Insured agrees to any additional premium or amendment of the provisions of this Policy required by the Insurer relating to such changes. Further, such change in coverage is conditioned upon the Insured's payment when due of any such additional premium required by the Insurer relating to such changes.

F.  MAINTENANCE OF UNDERLYING INSURANCE

While this Policy is in effect, the Insured agrees to maintain the Underlying Policies in full force and effect. The Insured's failure, or the failure of others, to comply with this Condition F. will not invalidate this Policy, but in the event of such failure, the Insurer will only be liable to the same extent as if there had been compliance.

G.  PAYMENT OF PREMIUM

The first Named Insured listed in Item 1 of the Declarations of this Policy shall be responsible for and act on behalf of all Insureds with respect to the payment of any premiums due under this Policy.

H.  REQUIRED NOTICES TO INSURER BY INSURED

1.  Notice of Occurrence, Offense, Claim or Suit

a.  The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy.

b.  Without limiting the requirements of a. above, the Named Insured shall separately, and as soon as practicable, give written notice to the Insurer when a payment is made or reserve established for any occurrence, offense, claim or suit which has brought the total of all payments and reserves by the Insured or underlying insurers to a level of twenty-five percent (25%) or more of the aggregate limits of the Underlying Policies.

2. **Notice Regarding Underlying Policies**

The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event:

a. Any Underlying Policy being cancelled or non-renewed or otherwise ceasing to be in effect, or being uncollectible in whole or in part; or

b. Any underlying insurer being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority.

3. **Notice Regarding Material Change**

The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event that the Named Insured is consolidating with or merging with or into, or transferring all or substantially all of its assets to, or acquiring or being acquired by any natural person or entity or group of natural persons and/or entities acting in concert.

With respect to the Notice required in Paragraphs 1, 2 and 3 of this Condition H., notice to an underlying insurer shall not constitute notice to the Insurer of this Policy. Notice under this Condition H. shall be given to the Insurer at the appropriate address set forth in Item 7 of the Declarations of this Policy.

I. **RESTRICTIVE AS UNDERLYING**

Notwithstanding any provision to the contrary in this Policy, including, without limitation, the Coverage provisions in Section I of this Policy, if any Underlying Policy with limits of liability in excess of the Controlling Underlying Policy but underlying to this Policy (the "Intervening Policy") contains warranties, terms, conditions, exclusions or limitations more restrictive than the Controlling Underlying Policy, whether on the effective date of this Policy or at any time during the Policy Period of this Policy, then this Policy shall be deemed to follow those more restrictive warranties, terms, conditions, exclusions or limitations of the Intervening Policy.

J. **UNIMPAIRED UNDERLYING LIMITS OF LIABILITY**

The Insured warrants that the aggregate limits of liability of the Underlying Policies, as shown in the Schedule of Underlying Policies, shall be unimpaired as of the effective date of this Policy. In the event such underlying aggregate limits of liability are impaired as of the effective date of this Policy, this Policy shall apply as if such aggregate limits of liability were unimpaired. In the event of non-concurrent policy periods between this Policy and Underlying Policies, only occurrences or claims that would be covered during the Policy Period of this Policy shall be considered in determining the extent of any reduction or exhaustion of the underlying aggregate limits of liability, and the Insured shall retain liability for any resulting gap in coverage.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its duly authorized officer.

Ironshore Indemnity Inc. by:

Secretary                                        President

EFF.COV.001 (03/11)                                        Page 6 of 6